CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 08 2018
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT W. GWYN, JR., | ) | Civil Action No. 7:17-cv-00143 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| B. W. BOOKER, et al., | ) | By: Hon. Michael F. Urbanski |
| Defendants. | ) | Chief United States District Judge |

Robert W. Gwyn, Jr., a Virginia inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff names four defendants associated with the Virginia Department of Corrections ("VDOC") and Green Rock Correctional Center ("GRCC"): Former GRCC Warden B. W. Booker; Current GRCC Warden Melvin Davis; GRCC Institutional Programs Manager ("IPM") R. Bateman; and VDOC Western Regional Administrator Marcus Elamlap. Plaintiff alleges that Defendants violated equal protection and religious rights by not approving a separate meeting at GRCC for inmates of the Apostolic faith only. Defendants filed a motion for summary judgment, to which Plaintiff responded, making the matter ripe for disposition.[1] After reviewing the record, the court grants Defendants' motion.

---

[1] Plaintiff also filed a reply to Defendants' answer that the court had not authorized in accordance with Federal Rules of Civil Procedure 7(a)(7) and 12(a)(1)(C). Consequently, that reply does not constitute a pleading that is allowed under the Federal Rules of Civil Procedure or afforded liberal construction, and the court does not consider it. See Fed. R. Civ. P. 7(a); Jourdan v. Jabe, 951 F.2d 108, 109-10 (6th Cir. 1991) (holding that a pro se litigant is not entitled to special consideration to excuse a failure to follow a straightforward procedural requirement that a lay person can comprehend as easily as a lawyer); see also Sherrill v. Holder, No. 12-00489, 2013 U.S. Dist. LEXIS 190373, at *1, 2013 WL 11316921, at *1 (D. Az. June 25, 2013) ("This Court did not grant Plaintiff leave to file a reply to Defendant's Answer. Further, the Court does not find any basis to permit Plaintiff to file a reply to the Defendant's Answer in this case. As such, Plaintiff's Response to Defendant's Answer is stricken from the record."). The court also does not consider Plaintiff's attachment to the complaint and to the motion for summary judgment to be admissible evidence. Neither document constitutes an affidavit or declaration made pursuant to 28 U.S.C. § 1746. While they each bear a notary mark, they lack any indication that Plaintiff swore truth to the facts before the notary. Consequently, neither of these documents constitutes a declaration of affidavit to oppose summary judgment. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); see Strong v. Johnson, 495 F.3d 134, 140 (4th Cir. 2007) (explaining the distinction between a jurat requiring an oath to the truthfulness of a document's contents versus merely acknowledging or certifying a document); *A Handbook for Virginia Notaries Public*, Office of the Secretary of the Commonwealth 10-11, 13 (2017), available at https://commonwealth.virginia.gov/media/9760/2017-december-15-revised-handbook.pdf (describing the duties of a Virginia notary public); see also Jourdan, supra.

# I.
## A.

VDOC Operating Procedure ("OP") 841.3, Religious Services, governs inmates' access to religious group activities such as communal worship services or study groups. Included as Attachment 3 to OP 841.3 is a list of the recognized religions that may operate without further approval in VDOC facilities where inmate participation, facility resources, and religious leadership are available. However, the OP recognizes that "although each [inmate] has the right to worship in their chosen manner, levels of inmate participation and availability of facility resources and religious leaders do not permit separate services for every possible form of worship at every facility." Consequently, the OP requires five inmates be "the standard minimum number to establish, maintain[,] and hold group services, programs or meetings" for any religious group. However, the OP does not prevent informal religious discussions in leisure areas such as dayrooms or recreation yards as long that are not disruptive.

Inmate requests for a new religious group activity for an already-approved religious group are filed at the facility. "If there appears to be sufficient . . . interest, the Facility Unit Head, in consultation with the facility Chaplain, should consider the request and provide time and space for the group to meet within the restrictions of the facility security level, mission, space, time, available supervision, etc." The facility must balance inmates' religious rights with inmate movement, room capacity, staffing challenges and in-room supervision at certain security levels. No recognized religious group with the minimum number of adherents should be denied at least one service and one study session per week.

Protestants are a recognized religious group authorized to operate in VDOC facilities. The Protestant religious group encompasses the various Protestant Christian denominations

including, inter alia, Seventh Day Adventists and Pentecostals. The VDOC considers Plaintiff's Apostolic faith as a type of Pentecostal faith.

Two separate multi-denominational Protestant worship services had been held at GRCC in order to accommodate the large number of Protestant inmates. Effective March 11, 2017, GRCC added a third multi-denominational Protestant worship service, "Discipleship Study," which meets in the visitation room on Saturday evenings. Protestant inmates at GRCC may now choose to attend one of the three multi-denominational Protestant worship services in addition to Bible study.

## B.

Plaintiff asserts four enumerated claims "in light of the Defendants' blatant violations of ... OP 841.3 ...."[2] First, Defendants discriminated against Plaintiff's Apostolic faith. Second, Defendants refused to provide space, time, and staff for an Apostolic group meeting. Third, Defendants negligently applied OP 841.3. Fourth, Defendants' negligence was the actual or proximate case of constitutional injury. Plaintiff relies solely on his various administrative remedies to support the claims.

On March 13, 2016, Plaintiff filed an informal complaint because Booker had previously refused Plaintiff's request for space and time for him to practice his faith. Booker refused the request two days later, citing the lack of space and time.

On March 16, 2016, Plaintiff filed a regular grievance based on the allegations in the informal complaint. Bateman met with Plaintiff but did not satisfactorily resolve Plaintiff's

---

[2] Plaintiff acknowledges in his response to the motion for summary judgment that this action is about the denial of a group Apostolic service allegedly in violation of the First and Fourteenth Amendments. See Castro v. United States, 540 U.S. 375, 386 (2003) (Scalia, J., concurring) ("Recharacterization is unlike 'liberal construction,' in that it requires a court deliberately to override the pro se litigant's choice of procedural vehicle for his claim."); Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate."). "[A] court need only address a pro se litigant's essential grievance and invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (internal quotation marks omitted).

grievance, and on April 4, 2016, Davis deemed the grievance unfounded. Davis noted that Bateman had informed Plaintiff that Protestant services are multi-denominational and that GRCC did not have space to divide out the various Protestant services out individually. Elamlap upheld Davis' decision on administrative review.

On May 26, 2016, Plaintiff submitted a request form to the GRCC Chaplain asking whether the visitation room was available on Saturday or Sunday evenings. Plaintiff noted he wanted to have space and time reserved for an Apostolic Christian Faith Group to "peaceably assemble." The Chaplain responded that same day, noting he believed no meetings take place in the visitation room on Saturday or Sunday evenings.

On August 1, 2016, Plaintiff submitted a request form pursuant to OP 841.3 for an Apostolic group service and study session per week. Booker denied the request without elaboration on August 4, 2016.

Plaintiff learned that another VDOC Protestant - Pentecostal group, the Seven Day Adventists, were allowed to meet as a separate group although Plaintiff's request for an Apostolic group meeting had been denied. Plaintiff acknowledges that once the number of participants in the Seven Day Adventists meetings dropped below the minimum allowed, the group was no longer authorized to meet separately.

On January 18, 2017, Plaintiff filed a request for a Christian Discipleship meeting for Saturday or Sunday evening. On February 15, 2017, the Chaplain responded that he still had not received the necessary number of requests to process the request. Nearly two weeks later on February 28, 2017, the Chaplain informed Plaintiff that the Discipleship Class was approved for meetings weekly starting on March 11, 2017.

## II.

Defendants filed a motion for summary judgment, arguing, inter alia, the defense of qualified immunity. A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the admissible evidence as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment.[3] Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

A government official sued in an individual capacity via § 1983 may invoke qualified immunity. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The doctrine of qualified immunity 'balances two important

---

[3] Thus, Plaintiff's various complaints raised for the first time in response to summary judgment are not reconstituted into independent claims merely because they are mentioned in the response.

interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). The "qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015); see In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority."). A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." Estate of Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." Id.

### III.
### A.

An inmate's right to religious exercise under the First Amendment must be balanced with a prison's institutional needs of security, discipline, and general administration. Cutter v. Wilkinson, 544 U.S. 709, 722 (2005); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). A "substantial burden" on religious exercise occurs under the First Amendment if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."[4] Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006); see, e.g., Patel v.

---

[4] The court assumes for purposes of this opinion that Plaintiff's desire for a group Apostolic service is a

6

Bureau of Prisons, 515 F.3d 807, 814 (8th Cir. 2008) ("When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA.").

A correctional policy or practice that substantially burdens an inmate's First Amendment right is valid if it is reasonably related to legitimate penological interests. Lovelace, supra at 199. Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Id. at 200 (citing Turner v. Safley, 482 U.S. 78, 89-92 (1987)); see Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis).

A claim under the First Amendment requires showing a defendant's conscious or intentional interference with the plaintiff's religious rights. Wall, 741 F.3d at 500 n.11. "Allowing negligence suits to proceed under [the First Amendment] would undermine ... deference [to the experience and expertise of prison and jail administrators] by exposing prison officials to an unduly high level of judicial scrutiny." Lovelace, 472 F.3d at 194; see Shaheed v. Winston, 885 F. Supp. 861, 868 (E.D. Va. 1995), aff'd, 161 F.3d 3 (4th Cir. 1998). Consequently, less than intentional conduct is not sufficient to meet the fault requirements under the First Amendment.

---

personal practice that is both sincerely held and rooted in religious belief. See, e.g., Cutter, 544 U.S. at 725.

7

Plaintiff fails to establish a "substantial burden" to his religious exercise as an Apostolic. He attends the group Protestant service voluntarily, and he fails to establish the he cannot "speak[] in tongues and praise danc[e]" on his own or with another in his cell or in the pod. Plaintiff fails to support his conclusion that he is "forced to engage in worship according to the evolutionist tenets" of other protestant denominations. Besides being voluntary, Plaintiff fails to explain how listening to Bible passages or others' reflections on the passages forced him to forfeit benefits or abandon a precept of his religion. While Plaintiff talks generally about the different practices among Protestant denominations, he does not allege that the practices are being forced on him. For example, Plaintiff complains that other Protestant faiths do not baptize by immersion like Aspotolics, but he fails to show that he is somehow forced to be baptized under a different faith's rituals. In another example, Plaintiff merely states, "Apostolics teach the need for conviction of sin, repentance, restitution, and confession for salvation[, but] [i]n other Protestant congregations a simple sinner's prayer is all that is required." These disparities at a voluntarily attended religious service are not so great as to put substantial pressure on Plaintiff to modify his beliefs, especially in light of Plaintiff's acknowledgement that his faith conforms in large part with other Christian's beliefs at GRCC. Moreover, Plaintiff's apprehension about other Protestants judging him by being an Apostolic is not a substantial burden or attributable to a defendant. Accordingly, Plaintiff fails to establish a substantial burden to religious exercise.

**B.**

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the

8

unequal treatment was the result of intentional or purposeful discrimination." Lee v. Johnson, 793 F. Supp. 2d 798, 802-03 (W.D. Va. 2011) (citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). The next step is to determine whether any such disparity is warranted. Morrison, supra. Equal protection claims in the context of prison are viewed under the reasonableness standard of Turner. Id. Thus, an inmate's equal protection claim must allege that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest. Winder v. Maynard, 2 F. Supp. 3d 709, 716 (D. Md.), aff'd, 583 F. App'x 286 (4th Cir. 2014).

Plaintiff fails to establish that he was treated differently from others with whom he was similarly situated. Plaintiff relies on the fact Seven Day Adventist inmates at GRCC were granted a special meeting while he, as an Apostolic, was not. However, Plaintiff as an individual requestor for group services is not the same as the various Seven Day Adventists who petitioned GRCC staff for a separate meeting.[5] Once Plaintiff and four other Apostolics petitioned GRCC staff for a separate meeting, it, too, was granted. Consequently, Plaintiff's allegations show that his individual requests for a group religious meeting were denied until the Chaplain received enough requests from other inmates to justify committing the space and staff to administer the meetings. Accordingly, Plaintiff fails to establish that he was treated differently than similarly situated inmates.

## C.

Even if Plaintiff established either a substantial burden under the First Amendment or that he was treated differently under the Fourteenth Amendment, Plaintiff fails to disprove that the denials of his individual requests for a separate religious meeting bears a rational relation to a

---

[5] And when the number of Seven Day Adventist participants dropped below the minimum number, that group's meetings were cancelled in conformity with policy.

legitimate penal interest. GRCC has had about twenty different religious groups already, and security staff and space were too limited to accommodate every individual's request for a separate religious meeting. Such accommodations would have the impact of diverting resources from maintaining the safety of the public, VDOC staff, and inmates. Time, staff, and space are limited in a prison setting. While Plaintiff purportedly may not have been allowed to "speak[] in tongues and praise danc[e]" during the group Protestant services, he does not allege he could not perform these activities in his cell or review his religious texts. Furthermore, Plaintiff was not prevented from prostelyzing others as required by his religion to be "an apostle, prophet, evangelist, pastor, or teacher." Plaintiff has not disproven that it was reasonable for prison officials to not divert limited resources any time an individual inmate wanted a separate space to exercise his own unique religious beliefs. Permitting the diversion of those limited resources to when a sufficient number of like-minded inmates seek group religious services is a reasonable accommodation of both the VDOC's responsibilities to public safety and inmates' First Amendment right to the free exercise of religion. Accordingly, Defendants are entitled to qualified immunity and summary judgment for the First and Fourteenth Amendment claims.

## V.

Plaintiff argues in the third and fourth claims that Defendants negligently failed to adhere to OP 841.3. A claim that prison officials have not followed their own independent policies or procedures does not state a constitutional claim. See, e.g., Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Furthermore, allegations of negligence are not actionable via § 1983. See, e.g., Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976);

Lovelace, 472 F.3d at 194. Accordingly, Defendants are entitled to qualified immunity and summary judgment for these claims.

## VI.

For the foregoing reasons, the court grants Defendants' motion for summary judgment.

ENTER: This 7th day of May, 2018.

/s/ Michael F. Urbanski
Chief United States District Judge